SANGER BROS., Inc. v. SMITH.

No. 14523.

United States Court of Appeals
Fifth Circuit.

March 26, 1954.

W. C. Gowan, John L. Hauer, Carrington, Gowan, Johnson & Walker, Dallas, Tex., for appellant.

Robert B. Hershey, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

Appellee George M. Smith, the plaintiff below, brought this action against Sanger Bros., Inc., in the District Court of Dallas County, Texas, to recover damages in the total sum of $8,924.42 for breach of a written contract of employment. The case was removed to the United States District Court for the Northern District of Texas by appellant Sangbros, Inc., the successor of Sanger Bros., Inc., on the ground of diversity. A trial was had before the court without a jury and judgment was entered in favor of the plaintiff in the sum of $2,712.-16 and the defendant has appealed.

The employment agreement between plaintiff and defendant provided in pertinent part that plaintiff was to be manager for a contract department in defendant's department store and was to specialize in the selling of floor covering merchandise, furniture and other items of merchandise to commercial institutions, such as hotels, offices, apartment houses, and motion picture show build-

ings. Beginning November 21, 1949, it was agreed that defendant would pay plaintiff semimonthly certain specified sales commissions,[1] and for the period November 21, 1949, to November 18, 1950, defendant guaranteed that plaintiff's monthly earnings would be as much as $541.67 per month. Following the expiration of this period it was stipulated that no guarantee would be in effect. It was further agreed that the employment relationship might be terminated at any time by either party and either party was to make full settlement with the other of all amounts owing within a period of seven days. After this contract had been in force for approximately one year its expiration date was by mutual consent extended to June 30, 1951, and plaintiff continued in defendant's employ until May 19, 1951.

In the court below, as here, plaintiff claimed that he was entitled to receive his $541.67 per month or $6,500.00 per year in addition to his total commission earnings during the year and a half of his employment in the sum of $8,924.42. Defendant on the other hand contends that it owes plaintiff nothing since his sales commission earnings did not exceed the sum of $9,750.05 which it paid to plaintiff at the rate of $541.67 per month during the period that he was in its employ.

Consistent with the pleadings the case was tried on the theory that the contract was ambiguous, and as a consequence, parol evidence of the negotiations which resulted in the written contract and of events occurring subsequent thereto was offered and received without objection. Plaintiff, the sole witness at the trial, testified that prior to his employment and on September 21, 1949, he wrote to defendant stating: "after thinking over our conversation I am inclined to agree with your suggestions in regard to the advantages of a commission and override over a set salary." In this communication plaintiff set forth his interpretation[2] of defendant's offer and then said: "I feel that I would be able to accept

1. The contract provides that the commissions were to be paid in the following manner:

"* * * on or about the 22nd and 8th of each month, a sales commission of 4½% on his own personal individual net sales on merchandise sold at regular markup price and actually secured by him. Regular mark up means a retail mark up of 32% or more.

"On his own individual personal net contract sales, that is sales having less than regular mark up, the sales commission to be paid Mr. George M. Smith will be as follows:

"On all sales having over a 32% retail mark up, it being understood that the cost of transportation and special discount is added in the cost of goods, the regular commission of 4½% will be paid. On the same basis of calculation where the retail mark up is more than 25% but less than 32% commission of 3% will be paid. On the same basis of calculation where the retail mark up is more than 20% but less than 25% a commission of 2½% will be paid. On the same basis of calculation where the retail mark up is more than 15% but less than 20% a commission of 2% will be paid. On the same basis of calculation where the retail mark up is less

than 15% and more than 10% a commission of 1½% will be paid. On sales having a mark up of less than 10% a commission of 1% will be paid.

"As Department Manager of Department 97, Mr. George M. Smith is to receive 2% on all net sales in Department 97 that are sales having a gross mark up of 25% or more and 1% on sales having less than 25% mark up. * * *"

2. This letter sets forth the following:

"I will give you my interpretation of your offer. It is a commission on the following basis:

4½% on own net sales mark-up 32% or more

3% on 25% to 32% mark-up

2½% on 20% to 25% mark-up

2% on 15% to 20% mark-up

1½% on 10% to 15% mark-up

1% on 10% or less than 10% mark-up

"There will also be an override based on the following set up which I presume is to be paid on all sales of this department and will not exclude the manager's sales.

2% on all sales of 25% or more mark-up

1% on all sales of less than 25% mark-up. * * *"

with the provision that your guarantee be raised to $8,500 per year." In response to this letter defendant advised plaintiff that while it would like to have him join the organization it would not consider guaranteeing him $8,500.00 per year the first year. And that while defendant felt reasonably certain that plaintiff would earn this much or more it was only disposed to offer at the present time the commission arrangement that they had discussed and a guarantee of $6500 per year. Thereafter plaintiff advised the defendant in writing that he had decided to accept its offer and subsequently and following some further negotiations in respect to certain matters not here material plaintiff signed the written contract which defendant had prepared.

On November 21, 1949, plaintiff entered upon his duties and during the first four months of his employment made no inquiry in respect to the payment of commissions in addition to the guaranteed monthly earnings which he was then receiving. When he did seek information from the comptroller in respect to the payment of commissions he was advised that commissions were settled after each six months period. Plaintiff did not press for a semimonthly settlement of commissions and matters rocked along until June, 1950, when he was informed by defendant's representative Simmons that he had no commission moneys coming to him at that time. To which plaintiff replied in substance that he knew this was so, because the department was brand new. On or about the first day of February, 1951, and after the expiration date of the contract had been extended plaintiff again asked Simmons when defendant was going to pay his commissions and again he was told that he had no money coming to him. Plaintiff continued in defendant's employ until May 19, 1951, and upon severing his relationship with defendant inquired as to his commissions and as on previous occasions was informed that none were due and owing.

The evidence is all one way and to the effect that during the eight months period which began in November, 1949, and ended in June, 1950, plaintiff sold very little merchandise. However, in some of the months which followed he did earn commissions in excess of $541.67. During such months the excess over the minimum guarantee figure of $541.67 was applied against previous months during which the plaintiff had earned in commissions a figure which was less than this amount.

The record standing thus, the court below mistakenly found as a fact that the contract in question contained the statement "a commission and $6500 per year guarantee." The court thought that this nonexistent contract provision was confusing because of the "wording 'and'", and concluded that it should consider the negotiations between the parties "for a construction of the meaning of the contract." As to the prior negotiations, the court referred only to the undisputed facts that defendant was undertaking the establishment of a new department; that it sought the services of plaintiff knowing that he was employed by a rival concern and had been a success in this particular field; and that after some jockeying, the parties agreed upon the written contract. Turning to the events subsequent to his agreement the court found as a fact that during the initial period prescribed in the contract plaintiff was paid his guaranteed "salary" of $541.67 per month whether he earned it, or not, and irrespective of whether his commissions amounted to that sum. The court did not find that plaintiff was paid his guaranteed salary following the initial period, though this fact is undisputed. But the court did find that after the department began running smoothly, which was from February, 1951, up until May, 1951, inclusive, there was an increase in sales, and the commissions thereon were much larger than the guaranteed monthly earnings. On the basis of these findings the court concluded that it was the understanding of the parties

that when in February the commissions began to exceed the minimum guarantee figure plaintiff was entitled to the whole of his commission earnings unreduced by any guarantee payments. Judgment was accordingly entered in favor of plaintiff and against defendant for the amount of $2,712.16 which sum represented the amount of commissions claimed by plaintiff for the period February 1, 1951, to May of that year.

We think it plain that the court was mistaken as to the precise language of the contract. Furthermore, there is nothing in this record which would justify a holding that the parties understood or even contended that the contract was to be altered or changed in February, 1951. As a matter of fact the evidence affirmatively shows that the parties agreed that the entire contract as written was simply extended from its expiration date to June 30, 1951.

The contract as written provides that plaintiff shall be paid certain specified commissions on sales and in respect to the remuneration which plaintiff is to receive recites that defendant guarantees unto plaintiff that his monthly earnings will be as much as $541.67 per month or $6500 per year. The contract thus speaks only of the payment of commissions and a guarantee and there is no language to be found therein which even remotely suggests that the guaranteed earnings were payable as a salary. Indeed, the word "salary" is not even mentioned in the contract. Even if we concede the contract to be ambiguous and that parol evidence of prior negotiations is competent, a consideration thereof leads to the same conclusion. The evidence in respect to prior negotiations clearly shows that defendant rejected plaintiff's original proposal that he be paid $12,000 a year; that thereafter plaintiff advised defendant in writing that he was inclined to agree with its suggestions in regard to the advantages of a commission and override over a set salary and countered with the proposition that he be given an annual guarantee of $8,500. To which defendant replied that it would

not consider guaranteeing such sum although a $6,500 guarantee would be acceptable. The written contract is thus consistent with the prior negotiations which were had between the parties and even if a consideration of this evidence were permissible it could not result in an interpretation of the contract such as that made by the court below.

It affirmatively appears that plaintiff was paid more money by defendant under the minimum earnings clause during the one and a half years of his employment than he earned in commissions during that period of time. Consequently, and under the plain provisions of the contract, we hold that plaintiff is not entitled to recover any sum from defendant.

For the reasons stated, the judgment is

Reversed.